IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRUCE E. VAWSER, | ) | 4:06CV3217 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| TRESSA ALIOTH, TINA | ) | **AND ORDER** |
| UPDEGROVE, and SCOTT | ) | |
| WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Tressa Alioth's ("Alioth") Motion to Dismiss (filing no. 47) and Defendants Tina Updegrove's ("Updegrove") and Scott Wilson's ("Wilson") Motion to Dismiss (filing no. 44).

## I.   BACKGROUND

Plaintiff filed his Complaint in this matter on September 4, 2006. (Filing No. 1.) Defendants filed Motions to Dismiss, which the court denied on September 28, 2007. (Filing No. 34.) The court denied the Motions to Dismiss without prejudice to reassertion and permitted Plaintiff an opportunity to file an amended complaint. (*Id.*) For his amended complaint, the court instructed Plaintiff to "set forth the factual basis" for certain state law claims against Updegrove and Wilson and to set forth "basic facts" showing that Alioth is not entitled to prosecutorial immunity. (*Id.* at CM/ECF p. 8.) Plaintiff filed his Amended Complaint on November 13, 2007. (Filing No. 39.) Updegrove and Wilson filed their second Motion to Dismiss and Brief in Support on December 17, 2007. (Filing Nos. 44 and 45.) Alioth filed her second Motion to Dismiss and Brief in Support on December 18, 2007. (Filing Nos. 47 and 48.) Plaintiff did not file a response to Defendants' Motions to Dismiss.

As set forth in this court's Local Rules, a motion raising a "substantial issue of law" must be supported by a brief. NECivR 7.1(a)(1)(A). Additionally, a party opposing a motion to dismiss "shall file a paginated brief which concisely states the reasons for opposing the motion" within 20 days of the filing of the motion to dismiss. NECivR 7.1(b)(1)(A-B). However, "failure to file an opposing brief shall not be considered to be a confession of the motion." NECivR 7.1(b)(1)(C).

The court has carefully reviewed the documents submitted by the parties. While Defendants submitted Motions to Dismiss and Briefs in Support, Plaintiff has not filed an opposing brief, or any other response to the Motions to Dismiss. Under the Local Rules of the court, the time in which to respond has passed and the Motions to Dismiss are deemed fully submitted.

## II.   SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT

The allegations contained in Plaintiff's Amended Complaint are more extensive than Plaintiff's original allegations. Plaintiff alleges that Wilson and Updegrove were employed by the Nebraska Humane Society in Omaha, Nebraska. (Filing No. 39 at CM/ECF p. 8.) Liberally construed, Plaintiff further alleges that Wilson and Updegrove "raided" Plaintiff's house along with the Omaha Police Department. (*Id.*) During the "raid," Plaintiff's dogs were taken "as evidence." (*Id.* at CM/ECF p. 9.) After this "raid" at Plaintiff's residence, Plaintiff's front door remained unlocked and some of Plaintiff's personal property was taken and his house "was set on fire." (*Id.*) Plaintiff and his family moved to another residence and paid rent because his home was uninhabitable after the "raid." (*Id.*)

Plaintiff alleges that Wilson and Updegrove "made false slanderous statements to the media" that he "bred and fought dogs." (*Id.*) Wilson and Updegrove also allegedly informed the media that they had "made the biggest dogfighting bust in Nebraska" by arresting Plaintiff. (*Id.*) These statements have prevented Plaintiff

from breeding his dogs. Plaintiff's dogs remained at the Nebraska Humane Society, where he paid approximately $3,650.00 to board them. (*Id.* at CM/ECF p. 11.) Updegrove originally told Plaintiff that he could receive a refund of at least a portion of this money if found not guilty, but Plaintiff has not received such a refund. (*Id.*)

Approximately two months after the "raid" on Plaintiff's residence, Plaintiff was arrested in Sarpy County, Nebraska for felony charges of dog fighting and animal cruelty. (*Id.* at CM/ECF p. 10.) Those charges were dismissed. Between October 24, 2005 and April 2006, Plaintiff alleges that Douglas County, Nebraska prosecutor Alioth "attempted to maliciously prosecute" him for the same Sarpy County, Nebraska charges. (*Id.* at CM/ECF p. 12.) All of the charges were dismissed "after 9 failed plea agreements" and "due to the lack of evidence." (*Id.* at CM/ECF P. 14.)

Plaintiff's Amended Complaint seeks relief for violations of his Fourth Amendment rights, and presumably pursuant to the supplemental jurisdiction statute, for defamation of character, financial setback, loss of dogs, and stress. (*Id.* at CM/ECF p. 6.) Plaintiff's Amended Complaint seeks only monetary damages against the Defendants. (*Id.*)

### III. ANALYSIS

#### A. Standard of Review

In order to withstand a motion to dismiss, a pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (overruling *Conley v. Gibson,* 355 U.S. 41 (1967), and setting new standard for failure to state a claim upon which relief may be granted). Regardless of whether a plaintiff is represented or appearing pro se, the plaintiff's complaint must allege

specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dept. of Corr. and Rehab.*, 294 F.3d 1043, 1043-1044 (8th Cir. 2002) (citations omitted).

### B. Alioth's Motion to Dismiss

In its September 28, 2007 Memorandum and Order, the court stated that Alioth's actions relating to the filing and dismissal of the charges against Plaintiff are protected by absolute prosecutorial immunity, even if Plaintiff believes those actions were somehow subjectively malicious or defamatory. (Filing No. 34 at CM/ECF pp. 3-4.) However, the court permitted Plaintiff an opportunity to amend his Complaint in order to state "basic facts showing that" Alioth's actions were investigatory or administrative rather than prosecutorial. (*Id.* at CM/ECF p. 8.) Plaintiff has not done so.

As set forth in the court's previous Memorandum and Order, "[p]rosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (citations omitted). Thus, absolute immunity attaches when a prosecutor's actions are "prosecutorial" rather than "investigatory or administrative." *Id.* Where a prosecutor's actions are investigatory or administrative, that individual is entitled only to qualified immunity. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). In addition, the focus in determining the nature of the prosecutor's actions is "whether the [prosecutor's] act was closely related to [her] role as advocate for the state." *Id.* at 1267. The official seeking the protection of absolute prosecutorial immunity "'bears the burden of showing that such immunity is justified for the function in question.'" *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991).

The court has carefully reviewed Plaintiff's Amended Complaint. The only allegations against Alioth relate to her involvement in Plaintiff's prosecution. (Filing No. 39 at CM/ECF pp. 5-7.) Plaintiff recounts Alioth's involvement in the various criminal charges, hearings, plea negotiations, and witness testimony relating to his prosecution in Douglas County, Nebraska. (*Id.*) There is not a single allegation that Alioth was involved in any investigatory or administrative conduct. As Plaintiff's allegations show, all of Alioth's actions were "closely related" to her role as "advocate for the state." *Brodnicki*, 75 F.3d at 1266. The court has given Plaintiff ample opportunity to allege otherwise. Alioth is entitled to absolute prosecutorial immunity in this matter and all claims against her are dismissed with prejudice.

### C.     Updegrove's and Wilson's Motion to Dismiss

In denying Updegrove and Wilson's previous Motion to Dismiss, the court noted that Plaintiff failed to state a claim upon which relief could be granted on his claims for defamation of character, financial setback, loss of dogs, and stress. (Filing No. 34 at CM/ECF p. 7.) However, the court permitted Plaintiff additional time in which to set forth "the factual basis for" his those claims. (*Id.* at CM/ECF p. 8.) Plaintiff's Amended Complaint sets forth enough facts to form a factual basis for his state law claims.

#### 1.     Defamation

To state a claim for defamation of character, a plaintiff must allege: 1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; 3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Norris v. Hathaway*, 561 N.W.2d 583, 547-48 (Neb. 1997). Further, a plaintiff may allege per se defamation

by alleging that the "spoken or written words . . . prejudice one in his or her profession or trade." *Id.*

Summarized, Plaintiff alleges that Updegrove and Wilson "made false slanderous statements to the media saying that they made the biggest dogfighting bust in Nebraska." (Filing No. 39 at CM/ECF p. 9.) Defendants also allegedly stated that they were "confident that [Plaintiff] bred and fought dogs," a charge on which Plaintiff was never convicted. (*Id.*) Plaintiff has been unable to breed his dogs as a result of these statements. Liberally construing Plaintiff's allegations, the court finds that Plaintiff has alleged enough to "nudge [his] claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S. Ct. at 1974.

### 2. Other Claims

Updegrove and Wilson argue that Plaintiff's remaining state law claims should be dismissed because Plaintiff fails to "demonstrat[e] Defendants' responsibility" for Plaintiff's injuries. (Filing No. 45 at CM/ECF p. 5.) Plaintiff has alleged that Updegrove and Wilson's actions in raiding his house, taking his dogs, failing to lock his door after the raid of his house, and holding his dogs at the Nebraska Humane Society led to financial losses and stress. (Filing No. 39 at CM/ECF pp. 8-11.) At this stage of the proceedings, Plaintiff is not required to "demonstrate," or prove, his claims, but must only set forth enough facts to "nudge [his] claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S. Ct. at 1974. Plaintiff has done so. Defendants' Motion to Dismiss is therefore denied without prejudice to reassertion pursuant to Federal Rule of Civil Procedure 56.[1]

---

[1] The court will allow Plaintiff's defamation and other state law claims to proceed along with Plaintiff's federal claims at this time. However, the court may not retain jurisdiction if Plaintiff's federal claims are later dismissed.

IT IS THEREFORE ORDERED that:

1.      Defendant Tressa Alioth's Motion to Dismiss (filing no. 47) is granted. Plaintiff's claims against Alioth are dismissed with prejudice.

2.      Defendants Tina Updegrove's and Scott Wilson's Motion to Dismiss (filing no. 44) is denied without prejudice to reassertion pursuant to Federal Rule of Civil Procedure 56.

3.      Updegrove and Wilson shall answer the Amended Complaint within 10 days from the date of this order, in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

4.      The Clerk of the court is directed to set a pro se case management deadline in this case with the following text: May 12, 2008: Check for Updegrove and Wilson answer.

April 29, 2008.                         BY THE COURT:


                                        s/ Joseph F. Bataillon
                                        Chief United States District Judge